05-1687-CBS

## AFFIDAVIT

I, Scott P. Dietsche, on oath, hereby depose and say as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, assigned to the Domestic Terrorism Squad of the Boston Field Office. I have been a Special Agent for three years. Currently, I am the Airport Liaison Coordinator and responsible for federal criminal matters prosecutable within this district that arise aboard aircraft.

2. In my current position I am familiar with federal criminal laws regarding in flight disturbances, including Title 49, United States Code, Section 46504, which provides in pertinent part:

> An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall [be guilty of a crime]

I am also aware that Section 46501(2) of Title 49 defines the "special aircraft jurisdiction of the United States" to include any of the following aircraft in flight: (A) a civil aircraft of the United States; (B) an aircraft of the armed forces of the United States; (C) another aircraft in the United States; (4) another aircraft outside the United States -- (1) that has its next scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States.

A civil aircraft of the United States is defined as "an aircraft registered under chapter 441 of [Title 49, United States Code]." 49 U.S.C. §40102(a)(17). The term civil aircraft is defined as "an aircraft except a public aircraft." 49 U.S.C. §40102(a)(16).

2. I submit this affidavit in support of a criminal complaint against SEAN SIMON JOHN JOYCE ("JOYCE"), a British citizen born November 12, 1966, for interference with flight crew members and attendants, in violation of 49 U.S.C. §46504. The information set forth in this affidavit is based upon my own investigation, discussions with other law enforcement officers, and my review of investigative reports. In submitting this affidavit, I have not included each and every fact known to me about the investigation, but only those facts which I believe are sufficient to establish the requisite probable cause.

3. On July 11, 2005, at approximately 8:10 pm, US Airways Flight 94 left Charlotte, North Carolina, on a non-stop flight destined for Gatwick Airport, London, England ("Flight 94"). Flight 94, was an Airbus 330, and carried 235 passengers and 12 crew members. US Airways Flight 94 is a civil aircraft of the United States, registered as required. JOYCE was a passenger on Flight 94, and was seated in the coach section of the aircraft, seat 30A. JOYCE began his travel earlier in the day aboard US Airways Flight 982 from Miami, Florida to Charlotte, North Carolina, which connected to Flight 94 for the Charlotte to

London leg of his trip.

4. At approximately 10:30 pm, Flight 94 was on route to London, England, and was located 37,000 feet over the Atlantic Ocean, approximately 150 nautical miles east of Boston, Massachusetts. At that time, JOYCE began to become disruptive aboard Flight 94. The passenger sitting next to him reported that before the disruption began, JOYCE drank two bottles of white wine and took some pills. He then started slurring his speech and threw his cup at passengers in front of his seat. He became violent at this time and had to be subdued by flight attendants and passengers. He pushed at least one flight attendant, took off his shirt, and butted another crew member in the face. Crew members asked for any law enforcement or miliary passengers to assist in controlling JOYCE. While he was being subdued and handcuffed by attendants and passengers, JOYCE continued to be violent and belligerent. He continually hit and spit on those trying to subdue him, swore repeatedly, and threatened to kill those subduing him, as well as all the passengers on the entire plane. Even after being removed to a galley area of the plane and handcuffed, flight attendants and passengers had to continue to restrain JOYCE through the remainder of the flight.

5. Upon reports from crew members of JOYCE'S behavior, and continued belligerence, the captain of Flight 94 made the

decision to divert the flight to Logan Airport, Boston, Massachusetts. Even after JOYCE was removed to the rear of the plane and handcuffed, flight attendants and passengers continued to restrain him through the remainder of the flight.

6. At approximately 11:00 pm, July 11, 2005, Flight 94 landed at Logan Airport and was boarded by six Massachusetts State Police Troopers. They responded to the galley area of the plane where JOYCE was on the floor and restrained by passengers and flexi-cuffs. They placed JOYCE under arrest and removed the flexi-cuffs and placed their own handcuffs on JOYCE. JOYCE continued to be highly agitated, combative, and was spitting, and cursing at everyone. He also threatened to kill anyone who touched him.

7. After, JOYCE was removed from Flight 94, and passengers and crew members interviewed, Flight 94 resumed its flight to London, England at approximately 12:40 am, July 12, 2005, delaying arrival in London by approximately three hours.

8. Based on the above, I believe probable cause exists to conclude that on July 11, 2005, SEAN SIMON JOHN JOYCE, did, on an aircraft in the special aircraft jurisdiction of the United States, assault and intimidate a flight crew member and flight attendant of the aircraft, and did thereby interfere with the performance of the duties of the member and attendant and lessen

the ability of the member and attendant to perform those duties, in violation of 49 U.S.C. §46504.

SCOTT P. DIETSCHE
Special Agent, F.B.I.

Subscribed and sworn to before me this 12th day of July 2005.

CHARLES B. SWARTWOOD, III
Chief U.S. Magistrate Judge